IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC GAS and ELECTRIC COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>JESSE M. LANGE DISTRIBUTOR, INC, et al.,<br><br>    Defendants. | CIV-S-05-1180 DFL KJM<br><br>MEMORANDUM OF OPINION AND ORDER |

    Plaintiff Pacific Gas and Electric Company ("PG&E") sued defendant Shell Oil Company ("Shell") for allegedly allowing hazardous waste to migrate onto PG&E's property. Shell moves: (1) for a more definite statement; (2) to dismiss the Proposition 65 claim; and (3) to strike PG&E's alter-ego and agency liability theories and PG&E's prayer for civil penalties and disgorgement. For the reasons stated below, the court: (1) DENIES Shell's motion for a more definite statement; (2) GRANTS Shell's motion to dismiss the second cause of action to the extent it seeks

1

civil penalties for a period exceeding one year; (3) GRANTS Shell's motion to strike PG&E's request for civil penalties and disgorgement under the California Unfair Competition Law ("UCL"); and (4) DENIES Shell's motion to strike the alter-ego and agency theories of liability.

I.

PG&E owns property located at 11239 Midway in Chico, California.  (Compl. ¶ 20.)  PG&E avers that "considerable environmental contamination is present in the soil and groundwater" beneath this property.  (Id. ¶ 22.)  PG&E claims that the contamination migrated from a nearby facility owned by defendant Jesse M. Lange Distributor ("Lange facility").  (Id. ¶ 24.)  PG&E alleges that Shell is "a current or former owner and/or operator" of the Lange facility, and that Shell's "acts, operations, omissions and decisions caused or resulted in" the contamination of PG&E's property.  (Id. ¶ 14.)

PG&E's complaint asserts eleven causes of action seeking damages and injunctive relief.  The claims are based on:  (1) the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A); (2) Proposition 65, Cal. Health & Safety Code § 25249.5; (3) nuisance; (4) trespass; (5) negligence; (6) the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; and (7) defective product.  PG&E also seeks declaratory relief.

II.

A.  <u>Motion for a More Definite Statement</u>

2

A party's pleading may be so vague or ambiguous that the adversary cannot respond. Fed.R.Civ.P. 12(e). When that occurs, the court may, in its discretion, grant a Rule 12(e) motion for a more definite statement. Id.; McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996). However, motions for a more definite statement are disfavored in light of the liberal pleading standards of Rule 8, and should not be granted unless the moving party "literally cannot frame a responsive pleading." Bureerong v. Uvawas, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996). Indeed, a Rule 12(e) motion is only proper where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted. See Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F.Supp. 940, 949 (E.D. Cal. 1981); Cellars v. Pac. Coast Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999); Davison v. Santa Barbara High Sch. Dist., 48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998)("If the moving party could obtain the missing detail through discovery, the motion should be denied.")

Shell argues that a more definite statement is required because "[p]laintiff's allegations with respect to Shell are so vague as to frustrate any attempt at a proper answer." (Mot. for More Definite Statement at 2.) However, Shell has demonstrated that it understands PG&E's claims. For example, in its Memorandum of Points and Authorities for the motions to dismiss and strike, Shell clearly and accurately summarizes PG&E's claims. Shell states that: (1) the case involves contaminated soil and groundwater beneath PG&E's property that allegedly

3

emanated from a property across the street owned by defendant Lange; (2) PG&E is attempting to hold Shell liable for the soil and groundwater contamination; and (3) the complaint alleges eleven causes of action, including nine California law claims, one federal law claim under the Resource Conservation and Recovery Act ("RCRA") and one claim for declaratory relief. (Mot. to Dismiss and Mot. to Strike at 1.)  This is enough information for Shell to determine the nature of the claim being asserted.  Indeed, every other defendant in this action has filed an answer to PG&E's complaint.  Thus, Shell's argument that the complaint is so ambiguous that it cannot be expected to respond is not persuasive.  See Brown v. Maxaam, Inc., No. 90-1468, 1991 WL 13918, *3 (E.D. La. Jan. 28, 1991) ("The ability of the other defendants to answer the plaintiffs' complaint casts considerable doubt on the proposition that the complaint is vague and ambiguous enough to make it unreasonable to require [defendant] to file a responsive pleading.")

   Shell's specific arguments attacking the complaint are also unconvincing.  Shell argues that PG&E's complaint: (1) "offers only ambiguous and contradictory allegations of Shell's relationship to the property" at issue; (2) "fails to specify which causes of action apply to which defendants" even though "ownership and control varied significantly over time;" and (3) cites ambiguous factual allegations regarding its alter-ego and agency theories against defendants.

1. <u>Ambiguity of Shell's Relationship to the Property at Issue</u>

PG&E's complaint alleges that Shell "is a current or former owner and/or operator of the tank farm at 11226 Midway whose acts, operations, omissions and decisions caused or resulted in releases or discharges which form the basis of PG&E's claims." (Compl. ¶ 14.)  Shell complains that this paragraph is vague and ambiguous because it could implicate Shell based on: (1) its own conduct; (2) vicarious responsibility based on the conduct of others; (3) duties that flow from property ownership; or (4) Shell's decisions to give control to others.  (Reply at 4. However, the specific information that Shell requests is not required by Rule 8(e) and would be more properly obtained through discovery.  See <u>Famolare</u>, 525 F.Supp. at 949.  Shell is better positioned than PG&E to know when and whether it owned or operated the Lange facility.  Furthermore, "[a] party may plead alternative theories of liability, even if those theories are inconsistent or independently sufficient." <u>Cellars</u>, 189 F.R.D. at 578-79 (citing Fed.R.Civ.P. 8(e)(2)).  In a RCRA action, liability can be based on past or present ownership or operation. <u>See</u> 42 U.S.C. § 6972.  PG&E is entitled to plead these alternative theories of Shell's potential liability.  If Shell believes that all of the allegations regarding its relationship to the property are untrue, it can deny them in its answer.  It can seek further clarification of plaintiff's theories by contention interrogatories.  But a more definite statement is not necessary to an answer.

5

2. <u>Failure to Specify Which Causes of Action Apply to Each Defendant</u>

Shell complains that PG&E's failure to specify which causes of action apply to each defendant prevents each defendant from responding appropriately. This is a strange argument given that all other defendants already have answered. The Complaint is not so confusing as Shell would have it: claims against "The Defendants" are made against all defendants; where a claim only implicates a few of the defendants, PG&E lists them individually. (<u>See</u>, e.g. Compl. ¶¶ 34, 36, 43, 60).

Shell also asserts that "several of these claims . . . refer vaguely to 'acts and omissions' without specifying what those acts or omissions may be when they occurred." (<u>Id.</u> at 4, citing Compl. ¶¶ 57, 68.) However, the reference to "the acts and omissions of The Defendants" in paragraphs 57 and 68 is not vague. The complaint makes clear that PG&E is referring to the facts set forth in paragraphs 1 through 31, which are unambiguous. (<u>See</u> Compl. ¶¶ 56, 67.)

Finally, Shell argues that PG&E has not sufficiently defined which parts of "23 C.C.R. §§ 2720 et seq." each defendant has violated. (<u>Id.</u> at 4, citing Compl. ¶ 35.) However, PG&E has no obligation to do so. <u>Thompson v. City of Shasta Lake</u>, 314 F.Supp.2d 1017, 1022 (E.D. Cal. 2004). "Absent special circumstances, a Rule 12(e) motion cannot be used to require the pleader to set forth 'the statutory or constitutional basis for his claim, only the facts underlying it.'" <u>Id.</u> at 1022 (quoting

6

McCalden v. Cal. Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990)).  Shell has not presented any "special circumstances" to justify making an exception here.

     3.   <u>Ambiguous Factual Allegations Regarding the Alter-Ego and Agency Liability Theories</u>

In paragraphs 5 and 18, PG&E alleges that "Lange . . . was an alter ego of Shell" and that "[e]ach of The Defendants was the agent of the Other Defendants, and that each of The Defendants ratified the acts and omissions of the Other Defendants." (<u>Id.</u> at 5.)  Shell argues that a more definite statement is required because these allegations "are so ambiguous or contradictory that Shell cannot determine how to respond." (Mot. for More Definite Statement at 4.)

In addition, Shell claims that PG&E has failed to provide sufficient facts to support an alter-ego or agency theory. (<u>Id.</u> at 5.) Specifically, it asserts that PG&E must make "specific factual allegations establishing the requisite control over the corporation in question or specific allegations of other hallmarks of an 'alter ego' situation." (Mot. to Dismiss and Mot. to Strike at 7.)  According to Shell, a heightened pleading standard applies to agency allegations.

"Rule 8(a)'s simplified pleading standard applies to all civil actions," except for those stated in Rule 9(b). <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 513 (2002).  Rule 9(b) "provides for greater particularity in all averments of fraud or mistake."  <u>Id.</u>  The Supreme Court has declined to create or

1 recognize any other exceptions.  Id.  Rule 9(b) makes no mention
2 of alter-ego or agency theories.  Therefore, PG&E "must satisfy
3 only the simple requirements of Rule 8(a)."  Swierkiewicz, 534
4 U.S. at 513.  Thus, the court can only grant a motion for more
5 definite statement if the "pleading fails to specify the
6 allegations in a manner that provides sufficient notice."  Id. at
7 514.

8     PG&E has alleged the following relevant facts in the
9 complaint: (1) defendant Jesse M. Lange Distributor, Inc. sells
10 Shell fuels and solvents at the Lange facility; (2) Shell
11 originally constructed, operated, and maintained the Lange
12 facility; and (3) Shell "is a current or former owner and/or
13 operator of the [Lange facility] whose acts, operations,
14 omissions and decisions caused or resulted in releases or
15 discharges which form the basis of PG and E's claims."  (Compl. ¶
16 6, 8, 14, 19.)

17     These facts, combined with PG&E's allegations in paragraphs
18 5 and 18, are sufficient to put Shell on notice that PG&E is
19 asserting claims based on an alter-ego or agency theory of
20 liability.  The factual allegations are not confusing.  Shell
21 should be able to admit or deny that it had an alter-ego or
22 agency relationship with Lange, owned the Lange property, or
23 contributed to the release of hazardous waste onto PG&E's
24 property.  It cannot contend that the claims are "so ambiguous or
25 contradictory" that it cannot respond.

26     Shell's reliance on Wady v. Provident Life & Accident Ins.

Co. of Am., 216 F.Supp.2d 1060, 1067 (C.D. Cal. 2002) is misplaced. In Wady, the plaintiff attempted to raise an alter-ego theory of liability for the first time on summary judgment. Plaintiff made no mention of an alter-ego theory in its complaint, nor did it plead any facts which could have given the defendant sufficient notice of such a claim. Id. at 1066-67. On these facts, the court concluded that it would not allow the plaintiff "to argue an 'unpleaded' alter ego theory to avoid summary judgment." Id.

As demonstrated above, the facts here differ significantly. Unlike the plaintiffs in Wady, PG&E specifically alleges alter-ego and agency theories of liability in the complaint. Moreover, it alleges facts to support these theories.

Shell also relies on Hokama v. E.F. Hutton & Co., Inc., 566 F.Supp. 636, 647 (C.D. Cal. 1983). In Hokama, limited partners brought an action against the limited partnership, general partners, and others to recover for alleged securities fraud violations. Plaintiffs relied, in part, on an alter-ego theory of liability. The Hokama court stated that "to pursue such a theory of liability, [plaintiffs had to] allege the elements of the doctrine. Conclusory allegations of alter ego status . . . are not sufficient." Id.

However, Hokama differs from the present case because the underlying allegations were based on fraud, which is subject to the heightened pleading standard under Rule 9(b). Here, PG&E does not allege fraud or any other claim subject to the standards

of Rule 9(b).  Therefore, Hokama is inapposite.  Moreover, Hokama predates the Supreme Court's reaffirmation of notice pleading in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993).

For the reasons stated above, the court DENIES Shell's motion for more definite statement.

B.  Motion to Dismiss Second Cause of Action

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). This rule provides for dismissal of a claim if, as a matter of law, "plaintiff could prove no set of facts in support of his claim that would entitle him to relief."  Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Newman v. Sathyavaglswaran, 287 F.3d 786, 788 (9th Cir. 2002).

Shell moves to dismiss the Proposition 65 claims in the Second Cause of Action, arguing that "both the civil penalty and injunctive relief claims are barred by the applicable statutes of limitations under California law."  (Mot. to Dismiss at 2.) Shell centers its argument on the dates set forth in paragraph 43 of the complaint which alleges:

> [O]n or before 1995, [defendants] knowingly and
> continuously have discharged and released petroleum
> products into the soil of the [Lange facility] where

>    these products are migrating and have migrated through the groundwater and into the soil underlying PG and E's Midway property.

(Compl. ¶ 43.)  Shell argues that this paragraph alleges a discharge that occurred ten years ago.  (Mot. to Dismiss at 3). Shell assumes that any "continuous discharge" referred to in the paragraph must refer to passive migration that resulted from the original ten-year-old discharge.  (Id.)  Because passive migration does not constitute a "discharge" for the purposes of Proposition 65, Shell claims that the statute of limitations began to run ten years ago.  (Id. at 3-4.)  Therefore, Shell concludes that PG&E's claims for civil penalties and injunctive relief are completely time-barred.  (Id.)

However, Shell misreads the complaint.  PG&E alleges that discharges continue today, not by way of passive migration, but via actual discharge.  Paragraph 21 of the complaint states, "PG and E avers that the releases and discharges occurred and started many years preceding the report to the Board, and that said releases and discharges continue to this day."  PG&E admits that paragraph 43 may have been ambiguous.  It could have said "beginning on or before 1995," or it could have added the words "and continuing to the present."  However, dismissal of the claim on this technicality would be unwarranted.  The complaint, when read in a light most favorable to PG&E, states a claim upon which relief could be granted.

However, PG&E's right to relief is more limited than it asserts.  PG&E claims that the four-year statute of limitations

11

1 available under the California Unfair Competition Law ("UCL")
2 applies to its Proposition 65 claim for civil penalties.
3 Therefore, it claims that it can recover civil penalties for any
4 releases that occurred over a four-year time period. This is
5 incorrect.

6 The UCL "permits violations of other laws to be treated as
7 unfair competition." Kasky v. Nike, Inc., 27 Cal.4th 939, 949
8 (2002). In the present case, PG&E "borrowed" the alleged
9 Proposition 65 violation from its second cause of action to
10 support a separate UCL claim in its ninth cause of action. As
11 the law above demonstrates, this was proper.

12 However, when a plaintiff takes advantage of the UCL in this
13 way, the two causes of action do not become one. The UCL claim
14 must remain a separate cause of action because the UCL provides
15 its own procedural guidelines and limited remedies. See Korea
16 Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1144
17 (2003); Cal. Bus. & Prof. Code §§17203-17208. In particular, the
18 UCL does not provide a damage remedy. Id. Thus, PG&E cannot
19 apply the four-year statute of limitations available under the
20 UCL to its Proposition 65 claim for civil penalties, which is
21 ordinarily subject to a one-year statute of limitations.
22 Shamsian v. Atlantic Richfield, Co., 107 Cal.App.4th 967, 977-78
23 (2003).

24 PG&E mistakenly relies on Cortez v. Purolator Air Filtration
25 Prods. Co., 23 Cal.4th 163, 179 (2000). In Cortez, the
26 California Supreme Court stated that "[a]ny action on any UCL

12

cause of action is subject to the four-year period of limitations created by that section." Thus, if a plaintiff brings a UCL cause of action based on a violation of Proposition 65, the statute of limitations for the UCL cause of action is four years. However, the statute of limitations for the Proposition 65 claim is still one year. Merely bringing a UCL claim does not allow a plaintiff to circumvent the statute of limitations already developed by the California legislature for different remedies under a different statute. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 182 (1999).

For these reasons, the court GRANTS defendant's motion to dismiss the second cause of action to the extent it seeks civil penalties for a period that exceeds one year.

D. <u>Motion to Strike</u>

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Also, "[a] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." Bureerong v. Uvawas, 922 F.Supp. 1450, 1479 (C.D. Cal. 1996) (citing Tapley v. Lockwood Green Eng'rs, Inc., 502 F.2d 559, 560 (8th Cir. 1974)). Rule 12(f) aims to prevent "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). However, courts generally disfavor motions to

strike because litigants often use them to delay proceedings and because pleadings have limited importance in federal practice. <u>Colaprico v. Sun Microsystems, Inc.</u>, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).

Under Rule 12(f), Shell seeks to strike the following from PG&E's complaint: (1) the sections seeking civil penalties and disgorgement under the UCL; and (2) the alter-ego and agency allegations. (Mot. to Strike at 4-6.)

1. <u>Civil Penalty and Disgorgement Remedies under the UCL</u>

PG&E sets forth the relief it seeks for its second and ninth causes of action in paragraph 2 of the prayer for relief. The second cause of action is the Proposition 65 claim and the ninth cause of action is the UCL claim. PG&E seeks the same relief for both, specifically: (1) injunctive relief; (2) civil penalties of $2,500 per day for a four-year period; and (3) disgorgement of "all monies saved by [defendants] by using PG and E's Midway property . . . as a disposal site for their wastes."

As discussed above in the previous section, a UCL claim is distinct from the "borrowed" claim on which it is based. For the same reasons PG&E cannot borrow the UCL's statute of limitations and apply it to the Proposition 65 claim, it cannot borrow the remedies available under Proposition 65 and apply them to the UCL claim. <u>See</u> <u>Korea Supply</u>, 29 Cal.4th at 1144. Instead, PG&E can only seek the remedies available under the UCL, namely injunctive relief and restitution. <u>Cel-Tech</u>, 20 Cal.4th at 179.

In light of the overbroad pleading, Shell moves to strike

14

any reference to civil penalties and disgorgement from paragraph 2 of PG&E's prayer for relief. (Mot. to Strike at 6.)[1] However, Shell's suggested solution is somewhat problematic. PG&E can still recover civil penalties under Proposition 65. Cal. Health & Safety Code § 25249.7. Therefore, it would be inappropriate to strike the prayer for civil penalties from the entire paragraph. See Bureerong, 922 F.Supp. at 1479. Rather, the reference in paragraph 2 to civil penalties shall be deemed limited to the Proposition 65 claim.

Similarly, PG&E's prayer for disgorgement of profits in paragraph 2 is non-restitutionary and therefore unavailable under the UCL. This remedy shall also be deemed to apply only to the Proposition 65 claim.

### 2. Alter-Ego and Agency Allegations

Shell also seeks to strike the alter-ego and agency allegations from paragraphs 5 and 18 of the complaint. Shell claims that these allegations are "impertinent" and "immaterial" to any valid claims as defined under Rule 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1994), rev'd on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S.Ct. 1023 (1994). "Impertinent matter consists of statements that do

---

[1] Shell also moves to strike references to civil penalties and disgorgement in paragraph 104. However, there is no such language in paragraph 104.

15

not pertain, and are not necessary, to the issues in question." Id.

The alter ego and agency theories are pertinent and have an important relationship to PG&E's claim for relief because they allege a connection between Shell and the hazardous waste release. Under Rule 8 and Swierkiewicz, PG&E need only assert "a short and plain statement of the claim." Fed.R.Civ.P. 8(a); Swierkiewicz, 534 U.S. at 513. PG&E has complied with this rule. Therefore, the court DENIES Shell's motion to strike the alter ego and agency theories of liability from the complaint.

### III.

For the reasons stated, the court: (1) DENIES defendant's motion for a more definite statement; (2) GRANTS defendant's motion to dismiss the second cause of action to the extent it seeks civil penalties for a period exceeding one year; (3) GRANTS Shell's motion to strike PG&E's UCL remedy request for civil penalties and disgorgement in paragraph 2 of the prayer for relief; and (4) DENIES Shell's motion to strike the alter ego and agency theories of liability.

IT IS SO ORDERED.

Dated: 12/21/2005               /s/ David F. Levi
                                    DAVID F. LEVI
                                    UNITED STATES DISTRICT JUDGE